# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRI ENBORG, et al.<br><br>  Plaintiff,<br><br>v.<br><br>ETHICON, INC., et al.,<br><br>  Defendants. | CASE NO. 2:20-cv-02477-AWI-BAK<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO AMEND SCHEDULING ORDER TO ALLOW SUBSTITUTION OF SPECIFIC CAUSATION EXPERT**<br><br>(Doc. No. 172) |

Plaintiff Terri Enborg brings a motion seeking to amend the scheduling order to permit her to substitute Dr. Bruce Rosenzweig for Dr. Donald Ostergard as her specific causation expert. Doc. No. 172. The motion has been fully briefed and was taken under submission following oral argument on April 25, 2022. Doc. No. 184. For the reasons set forth below, the motion will be denied.

**RELEVANT BACKGROUND[1]**

On May 1, 2019, the MDL Court issued a scheduling order applicable to this case and other Wave 12 cases in the pelvic mesh MDL providing, *inter alia*, that plaintiffs must serve expert disclosures under Rule 26 of the Federal Rules of Civil Procedure by August 19, 2019.

---

[1] The events set forth here are compiled from briefs and supporting documents filed by the parties in connection with this motion, Doc. No. 172, and Ethicon's motion to strike Dr. Ostergard's second report and exclude some of Dr. Ostergard's opinions and testimony. Doc. No. 111. It does not appear that there is a dispute of consequence between the parties as to this chronology.

Doc. No. 15 at 3.[2]

On August 19, 2019, Enborg disclosed Dr. Ostergard as her specific causation expert and furnished Ethicon[3] with a copy of Dr. Ostergard's expert report on the connection between Ethicon's TVT device and Enborg's alleged injuries. On October 14, 2019, Enborg served Ethicon with a revised version of Dr. Ostergard's August 19, 2019 report with additional content regarding dyspareunia.

On November 9, 2021, Ethicon refiled a motion to strike Dr. Ostergard's second report and exclude some of Dr. Ostergard's opinions and testimony, Doc. No. 111, that had originally been filed with the MDL Court on November 1, 2019. Doc. No. 42.

Enborg's counsel also retained Dr. Ostergard, who lives in a remote location in the mountains of Colorado, as an expert for the plaintiff in *McBroom v. Ethicon*, a case in the United States District Court for the District of Arizona involving pelvic mesh devices manufactured by Ethicon.

In January 2022, Enborg's counsel[4] advised Ethicon that Dr. Ostergard could not appear at trial in *McBroom* because a tractor accident two years earlier had left him infirm. On February 10, 2022, Enborg's counsel proposed to Ethicon's counsel that Dr. Ostergard make himself available "in the Denver area" for an "evidence deposition" in lieu of appearing at trial.

On February 23, 2022, Enborg's counsel advised Ethicon that Dr. Ostergard would appear at the *McBroom* trial after all. On March 1, 2022, however, Dr. Ostergard informed Enborg's counsel that he would not appear in person at the *McBroom* trial, and on March 2, 2022, Enborg's counsel filed a motion in *McBroom* stating that Dr. Ostergard could not travel for the trial due to a "very anxiety provoking event" involving his family. It was determined that Dr. Ostergard would testify remotely.

The *McBroom* trial commenced on March 7, 2022.

---

[2] Page number citations are to the page number in the CM/ECF stamp at the top of each page of documents on the Court's electronic docket.

[3] Unless otherwise indicated, "Ethicon" refers to the two remaining Defendants in this action, Ethicon, Inc. and Johnson and Johnson.

[4] Actions taken by Enborg's counsel with respect to Dr. Ostergard in *McBroom* were taken in their role as counsel for the *McBroom* plaintiff.

On March 9, 2022, Dr. Ostergard testified by remote video link. The testimony was impaired by "minor technical difficulties" and was "disjointed and extremely difficult to follow" because Dr. Ostergard had a difficult time hearing. While Dr. Ostergard was testifying in *McBroom*, Enborg's counsel sent emails to Ethicon's counsel asking if Ethicon would object to a substitution in this case.

On March 15, 2022, the jury rendered a defense verdict in *McBroom*.

On March 16, 2022, this Court issued orders striking content (primarily regarding dyspareunia) that Dr. Ostergard added to his report on October 14, 2019 and partially granting Ethicon's motion to exclude some of Dr. Ostergard's opinions. Doc. No. 153.

Enborg notified the Court and Ethicon at the pretrial conference, which was held on March 24, 2022, that she intended to move for an expert substitution in this case. See Doc. No. 161.

On April 5, 2022, Enborg filed the instant motion seeking to replace her specific causation expert, Dr. Ostergard, with her general causation expert, Dr. Bruce Rosenzweig.

## **LEGAL FRAMEWORK**

In the Ninth Circuit, substitution of an expert witness after applicable discovery deadlines have passed has closed is generally governed by Rule[5] 16(b) of the Federal Rules of Civil Procedure.[6] See e.g, Jones v. Nat'l R.R. Passenger Corp., 2022 WL 689000, at *2 (N.D. Cal. Feb. 23, 2022) ("Jones's motion to substitute expert witnesses is properly analyzed under Federal Rule

---

[5] Unless otherwise indicated, "Rule" refers to the Federal Rules of Civil Procedure.

[6] As Enborg points out, see Doc. No. 172 at 4:7-13, courts sometimes characterize substitution as a "late and untimely" expert disclosure under Rule 26(a)(2) that is subject to analysis under Rule 37(c), which requires exclusion of an expert who is not timely disclosed unless the untimely disclosure was "substantially justified" or "harmless." See e.g., Zone Sports Ctr., LLC v. Rodriguez, 2016 WL 224093, at *2 (E.D. Cal. Jan. 19, 2016); Nijjar v. Gen. Star Indent. Co., 2014 WL 271630, at *2 (C.D. Cal. Jan. 23, 2014). In the Court's view, however, this is not merely a disclosure issue because substitution typically entails additional discovery of some sort, including, at a minimum, deposition of the new expert. Thus, in allowing a substitution where, as here, discovery has closed, a court will most likely find itself modifying some aspect of the operative scheduling order to "enlarge the discovery period." See Chu v. Smith's Food & Drug Centers, Inc., 2021 WL 4714633, at *4 (D. Nev. Oct. 8, 2021); see also, Dag Enterprises, Inc. v. Exxon Mobil Corp., 226 F.R.D. 95, 105 (D.D.C. 2005) ("Because the deadline for discovery expired, Plaintiffs are obligated to seek a modification of the Scheduling Order by demonstrating 'good cause' before serving additional discovery and redrafting their expert reports."). The Court will therefore apply Rule 16(b) to this motion. See Fid. Nat. Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa, 308 F.R.D. 649, 652 (S.D. Cal. 2015) (applying Rule 16(b) to substitution motion on finding that granting motion would require the court "to issue an Amended Scheduling Order setting new dates for the disclosure of expert and rebuttal reports, and re-open expert discovery").

3

of Civil Procedure Rule 16."); Miesen v. Henderson, 2022 WL 392931, *1 (D. Idaho Feb. 2, 2022) (stating that "[m]otions to substitute expert witnesses are essentially motions to amend the scheduling order" and that schedule modifications are governed by 16(b)(4)); Est. of Clifford v. Placer Cty., 2018 WL 746475, at *1–*2 (E.D. Cal. Feb. 6, 2018) ("Whether substitution of an expert should be permitted is properly analyzed under Federal Rule of Civil Procedure 16(b), which permits the amendment of a pretrial scheduling order only on a showing of good cause."); Nat'l Union Fire Ins., 308 F.R.D. at 652 ("At its heart, [defendant's] request to designate a substitute expert long after the expert designation deadline is, in fact, a request to amend the Scheduling Order.").

Rule 16(b) sets forth the required and permitted contents of scheduling orders (including discovery deadlines) and provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(3)-(4). Under the "good cause" standard, "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion," but "the focus of the inquiry is upon the moving party's reasons for seeking modification." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) (citation omitted); Magers v. Jones, 2015 WL 925655, at *3 (E.D. Cal. Feb. 26, 2015) (finding that the focus of the "good cause" inquiry is on the moving party's "reasons for seeking modification"). "What constitutes good cause sufficient to justify the modification of a scheduling order necessarily varies with the circumstances of each case." Rang Dong Joint Stock Co. v. J.F. Hillebrand USA, Inc., 2020 WL 3841185, at *3 (E.D. Cal. July 8, 2020) (quoting 6A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1522.2 (3d ed. 2019)).

Rule 6(b) also applies where substitution is sought after applicable scheduling order deadlines have passed. Miesen, 2022 WL 392931 at *2 (citing Fed.R.Civ.P. 6(b)(1) and Harrison v. United States, 2021 WL 1269119, at *8 (D. Alaska Apr. 6, 2021)). Rule 6(b)(1) provides, in pertinent part, as follows: "When an act may or must be done within a specified time, the court may, for good cause, extend the time … on motion made after the time has expired if the party failed to act because of excusable neglect." Fed.R.Civ.P. 6(b)(1); see also, Martinez v. Tarrant, 59 F. App'x 998, 999 (9th Cir. 2003) (affirming district court order denying leave to substitute expert

witness because "[p]laintiffs did not demonstrate that the late disclosure was due to excusable neglect").

# PLAINTIFF'S MOTION

*Enborg's Arguments*

Enborg argues that substitution is justified because Dr. Ostergard is unable to attend trial in this matter and his remote testimony at the recent *McBroom* trial via video was discombobulated and ineffective due to technical issues and Dr. Ostergard's "serious hearing impairment." Further, she contends that her counsel "experienced significant difficulty working with Dr. Ostergard" at the *McBroom* trial. For example, Dr. Ostergard failed to inform counsel of his debilitating tractor accident "until a few short months" before the *McBroom* trial; gave counsel mixed signals regarding his ability to testify in person; and did not inform counsel that he would be unable to testify in person until "just days before the … start date." In short, Enborg contends that she is entitled to an effective witness on specific causation (a key issue in this case) and that Dr. Ostergard is not capable of performing that role, despite his distinguished professional accomplishments.

There would be no prejudice to Ethicon from substitution, Enborg contends, because: (i) there is ample time for Dr. Ostergard's proposed replacement, Dr. Rosenzweig, to issue a specific causation report and for Ethicon to depose him before trial, particularly since trial has been continued from May 17, 2022 to June 21, 2022; (ii) Dr. Rosenzweig has already been disclosed (and deposed) as a general causation expert in this case; and (iii) Dr. Rosenzweig has been disclosed as a specific causation expert (as well as a general causation expert) in other pelvic mesh lawsuits against Ethicon. In addition, Dr. Rosenzweig could be "limited to the subject matter and theories already espoused by" Dr. Ostergard or even adopt "Dr. Ostergard's initial Rule 26 report" outright, without issuing a specific causation report of his own.

*Defendants' Arguments*

Ethicon argues that Enborg has provided no evidence from Dr. Ostergard—in the form of a declaration or otherwise—showing that (or why) he is unable to attend trial in person. Further, Ethicon argues that remote testimony is now commonplace and that Enborg has failed to show that

5

1  remote testimony is not feasible in this case if routine measures are taken to ensure a strong feed
2  and address Dr. Ostergard's hearing impairment. Ethicon also argues that Dr. Ostergard offered
3  inconsistent excuses for failing to testify live at the *McBroom* trial and that Enborg only sought
4  substitution after the *McBroom* jury returned a verdict in favor of the defense and this Court issued
5  an order limiting Dr. Ostergard's testimony. Finally, Ethicon contends that substitution will
6  necessitate additional discovery in some form and is inherently prejudicial so close to trial.

## DISCUSSION

In the Court's view, Enborg's motion fails because Enborg has not shown that Dr. Ostergard is unable to attend trial in person. Indeed, after reviewing Enborg's papers and hearing oral argument, the Court cannot determine what Dr. Ostergard's reason for missing trial is—let alone determine whether it has merit and rises to the level other courts have found to justify substitution. See, e.g., Howard v. Securitas Sec. Servs., USA, Inc., Case No. 08–2746 (N. D. Ill. June 23, 2011) (allowing substitution of party's expert after the disclosure deadline where original expert witness was recovering from leukemia); Lincoln Nat. Life Ins. Co. v. Transamerica Fin. Life Ins. Co., 2010 WL 3892860, at *1, *4 (N.D. Ind. Sept. 30, 2010) (allowing substitution of expert witness where original expert was unavailable to testify due to incarceration); Jung v. Neschis, 2007 WL 5256966, at *4, *16–*17 (S.D.N.Y. Oct. 23, 2007) (extending expert discovery to allow for expert substitution where original expert developed Alzheimer's disease in course of litigation).

In *McBroom*, Dr. Ostergard told counsel he was infirm due to a tractor accident that occurred a couple of years ago and then informed counsel he could not travel due to unspecified family issues. Those explanations strike the Court as problematically vague, unsubstantiated and inconsistent, but even crediting them for purposes of the *McBroom* trial, they do not show why, more than three months later, Dr. Ostergard cannot attend trial (and testify competently) in these proceedings. It appeared at oral argument that Enborg's counsel was concerned about making statements that might embarrass or discredit Dr. Ostergard, but while the Court is sympathetic to such concerns, the Court cannot find, without supporting facts, that Dr. Ostergard is unable to attend trial in person. See Magers, 2015 WL 925655 at *3 (finding defendant had not shown "non-

6

conclusory facts justifying the amendments to the scheduling order" she sought under Rule 16(b)).

The Court accepts that Dr. Ostergard has difficulty hearing, but Enborg tacitly concedes that that would not be a problem if Dr. Ostergard testified in person and fails to set forth facts sufficient to show that it precludes remote testimony if, for some reason, it turns out Dr. Ostergard is unable to travel. There were apparently some problems with Dr. Ostergard's remote testimony in *McBroom* due to a spotty internet connection and Dr. Ostergard's hearing problems, but as Ethicon points out, there is no good reason why Dr. Ostergard cannot secure a reliable internet connection and multiple devices—including headphones, hearing aids and closed captioning—that are available to assist persons with hearing impairments. Enborg's counsel claims that it took measures along these lines in *McBroom*, but the Court is simply not convinced that remote testimony could not be used here (as it has been in other cases) if proper arrangements, tailored to Dr. Ostergard's circumstances and reflecting lessons learned in *McBroom*, are made.

Similarly, the Court cannot find that the mere fact that Dr. Ostergard was difficult to deal with at the *McBroom* trial provides adequate grounds for substitution so close to trial in this case. Enborg cites *Belmont Corp. v. Shell Oil Co.*, 1998 WL 242686, at *1 (N.D. Cal. May 12, 1998) on this issue. In that case, however, plaintiff's problems with its expert persisted for several months and compromised the quality of the expert's reports. In addition, plaintiff advised defendant that it wanted to replace its expert more than five months before trial; furnished defendant with the proposed new expert report more than four months before trial (and before the motion to substitute was decided); and agreed to reimburse defendant for time spent reviewing and responding to the original expert's report.

Here, the problems pertain merely to arranging attendance at trial and the motion to substitute was filed less than two months before the trial date in effect at the time of filing. Further, Enborg originally indicated that the substitute expert would issue a new specific causation report if substitution were approved, without offering any concessions of consequence to ease the burden of last-minute substitution on Ethicon or the Court. The trial date in this action has since been continued by a month and Enborg stated on reply that Dr. Rosenzweig could adopt Dr. Ostergard's report outright, without issuing a report of his own. Still, the Court cannot find based

on *Belmont* that substitution is warranted in this case.

## CONCLUSION

In sum, Enborg has failed to set forth facts showing that Dr. Ostergard is unable to attend trial in person or that Dr. Ostergard cannot provide effective remote testimony, if necessary. Further, Enborg has not convinced the Court that substitution is warranted on the grounds that Dr. Ostergard was difficult to work with in *McBroom*. The problems in *McBroom* had to do with arranging Dr. Ostergard's trial testimony. Dr. Ostergard ultimately provided trial testimony in *McBroom*, and in the Court's view, sparing Enborg's counsel the hassle of dealing with Dr. Ostergard at trial does not justify reopening discovery on the eve of trial in this multi-year case. The Court therefore finds Enborg has failed to show good cause for substitution and will deny the motion.[7]

## ORDER

Accordingly, IT IS HEREBY ORDERED that Plaintiff Terri Enborg's motion to amend the scheduling order to permit substitution of an expert witness (Doc. No. 172) is DENIED.

IT IS SO ORDERED.

Dated:   April 29, 2022                              _____
                                                     SENIOR DISTRICT JUDGE

---

[7] In light of the foregoing, it is unnecessary for the Court address the "excusable neglect" standard under Rule 6(b).