# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRI ENBORG, et al.<br><br>Plaintiffs,<br><br>v.<br><br>ETHICON, INC., et al.,<br><br>Defendants. | CASE NO. 2:20-cv-02477-AWI-BAK<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO RECONSIDER ORDER STRIKING DR. OSTERGARD'S SECOND EXPERT REPORT**<br><br>(Doc. No. 160) |

Plaintiff Terri Enborg brings a motion seeking reconsideration, Doc. No. 160, of an order granting Ethicon's[1] motion to strike an expert report prepared by Ms. Enborg's specific causation expert, Dr. Donald Ostergard. Doc. Nos. 111, 153. The motion has been fully briefed and the Court allowed oral argument on May 23, 2022. For the reasons set forth below, Ms. Enborg's motion to reconsider will be granted and the Court will deny Ethicon's motion to strike.

## **PROCEDURAL HISTORY**

On May 1, 2019, the MDL Court issued a scheduling order applicable to this case and other Wave 12 cases in the Ethicon pelvic mesh MDL stating, *inter alia*, that plaintiffs must serve initial expert disclosures under Rule 26[2] of the Federal Rules of Civil Procedure by August 19, 2019. Doc. No. 15. The scheduling order also set a September 18, 2019 deadline for service of defendants' initial expert disclosures; a September 25, 2019 deadline for service of rebuttal

---

[1] "Ethicon," as used herein refers to the two remaining defendants in this action, Johnson & Johnson and its subsidiary, Ethicon, Inc.
[2] Unless otherwise indicated, "Rule," as used herein, refers to the Federal Rules of Civil Procedure.

disclosures; an October 25, 2019 deadline for depositions and close of discovery; and a November 4, 2019 deadline for filing *Daubert* motions. Id.

On August 19, 2019, Ms. Enborg disclosed Dr. Ostergard as her specific causation expert and furnished Ethicon with a copy of Dr. Ostergard's initial expert report. See Doc. No. 26; Doc. No. 111-3 at 2-3, 5-22. The report noted that dyspareunia appeared in Ms. Enborg's post-implant medical history and opined that "continued dyspareunia" was a future possible adverse event due to Ms. Enborg's TVT implant but did not otherwise speak to dyspareunia causation. See id. at 5-22.

Ms. Enborg was deposed on August 21, 2019. Doc. No. 160-1 at 3. At her deposition, Ms. Enborg testified that she experienced pain with sexual intercourse (dyspareunia) after the TVT was implanted. Doc. No. 160-8 at 6:3-15. Ms. Enborg's former husband was deposed on September 5, 2019. Doc. No. 160-9. He also testified that Ms. Enborg experienced pain with sexual intercourse after TVT implantation. Id. at 4:10-25.

On September 12, 2019, one of Ethicon's experts, Dr. Olga Ramm, issued an expert report opining that Ms. Enborg's dyspareunia was a "pre-existing condition[]" that was "not due to the TVT." See Doc. No. 160-10 at 22.

On October 14, 2019, Ms. Enborg served Ethicon with a modified version of Dr. Ostergard's August 19, 2019 report (generally referred to herein as Dr. Ostergard's "second report") adding the opinion that Ms. Enborg's dyspareunia was caused by the TVT. Doc. No. 111-3 at 40-41. Dr. Ostergard was deposed on October 18, 2019. Doc. No. 30; Doc. No. 117-2.

On October 19, 2019, Dr. Ramm issued a second expert report again stating that Ms. Enborg's "dyspareunia is not due to the TVT," Doc. No. 160-13 at 24, and on October 22, 2019, Dr. Ramm testified to the same effect at deposition. Doc. No. 160-14 at 4:13-5-7.

Discovery closed on October 25, 2019. Doc. No. 160-15 at 4.

On November 1, 2019 (while this action was still before the MDL Court), Ethicon filed a motion to strike Dr. Ostergard's second report and a motion to otherwise exclude some of Dr. Ostergard's opinions and testimony. Doc. No. 42.

On December 15, 2020, the case was transferred to this Court. See Doc. No. 52.

On April 21, 2021, this Court issued a scheduling order addressing, *inter alia*, deadlines for pretrial motions, Doc. No. 87, and on October 14, 2021, the Court issued a stipulated order extending the filing deadline for *Daubert* motions to November 8, 2021. Doc. No. 100 at 4:4-5.

On November 9, 2021, Ethicon again filed a motion to strike Dr. Ostergard's second report (and a motion to otherwise exclude some of Dr. Ostergard's opinions and testimony).[3] See Doc. No. 111.

On March 16, 2022, the Court issued an order granting Ethicon's motion to strike Dr. Ostergard's second report. Doc. No. 153 at 13-15.

On March 23, 2022, Ms. Enborg filed a motion seeking reconsideration of the order granting Ethicon's motion to strike. Doc. No. 160. The opposition and reply were filed on April 5, 2022 and April 8, 2022, respectively. Doc. Nos. 169, 175. On April 25, 2022, the Court issued an order allowing the parties to submit additional briefing applying the assumption that Dr. Ostergard's second report was not a supplement under Rule 26(e). Doc. No. 184. The parties filed supplemental briefs, Doc. Nos. 214, 219, and the Court allowed oral argument on May 23, 2022.

## RELEVANT LAW AND MOTIONS

**A.    Relevant Provisions of the Federal Rules of Civil Procedure**

Rule 26 of the Federal Rules of Civil Procedure sets forth various provisions governing discovery, including provisions governing expert disclosure. The provisions at issue here are Rule 26(a)(2)(A)-(B) and Rule 26(e)(2).

Rule 26(a)(2)(A) provides, in essence, that a party must disclose to the other parties the identity of any witness it may use to present expert testimony at trial.

Rule 26(a)(2)(B) states:

> *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, [the Rule 26(a)(2)(A)] disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

---

[3] Neither party has substantively addressed the significance, if any, of the fact that the motion to strike was filed a day after the November 8, 2021 deadline for *Daubert* motions. That topic, therefore, is not considered here.

3

>   (i)   a complete statement of all opinions the witness will express and the basis and reasons for them;
>   (ii)  the facts or data considered by the witness in forming them;
>   (iii) any exhibits that will be used to summarize or support them;
>   (iv)  the witness's qualifications, including a list of all publications authored in the previous 10 years;
>   (v)   a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>   (vi)  a statement of the compensation to be paid for the study and testimony in the case.

Rule 26(e)(2) states:

> *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

In addition, Rule 37 addresses failure to make disclosures required under Rule 26. Specifically, Rule 37(c)(1) states:

> *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
>   (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>   (B) may inform the jury of the party's failure; and
>   (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi).

**B.      Ethicon's Motion to Strike**

Dr. Ostergard's second report is essentially identical to his initial report, except that, in addition to providing a small amount of additional information regarding Ms. Enborg's alleged conditions, it sets forth an opinion, based on differential diagnosis, that Ms. Enborg's dyspareunia was caused by Ethicon's TVT device.

Ethicon argued, based largely on an order in which the MDL Court granted a motion to strike (*Mullins v. Ethicon*, 2017 WL 455938 (S.D. W. Va. Feb. 2, 2017)), that Dr. Ostergard's second report should be stricken because it was served after the August 19, 2019 disclosure deadline for initial experts reports in the MDL Court's scheduling order (per Rule 26(a)(2)(B)) and does not constitute a supplement under Rule 26(e)(2) because it was based on information

4

available prior to the deadline for initial expert disclosures. Doc. No. 111-1 at 3:12-4:2.

Ms. Enborg argued that Dr. Ostergard's second report was not untimely because it was a Rule 26(e)(2) supplemental report. See Doc. No. 117. Specifically, Ms. Enborg argued that "Dr. Ostergard added his causation opinion regarding dyspareunia not because he forgot to, but because information not previously available led to his new opinion." Id. at 4:6-7. Further, Ms. Enborg argued that "*Mullins* is not directly on point" because, in that case, the reports at issue were served five months after the close of discovery, while in this case, Dr. Ostergard's second report was served prior to the close of discovery. Id. at 4:13-16. Finally, Ms. Enborg argued that Ethicon "do[es] not, and cannot, claim prejudice" because Ethicon "had Dr. Ostergard's supplemental report prior to Dr. Ostergard's deposition, the depositions of their controlled experts, and deadlines for *Daubert* and dispositive motions" and did not request either a deposition continuance or a second deposition for Dr. Ostergard in connection with the late dyspareunia causation opinion. Id. at 4:22-5:2.

In deciding Ethicon's motion to strike Dr. Ostergard's second report, the Court agreed with the MDL Court's statement in *Mullins* that Rule 26(e) "is not a device to allow a party's expert to engage in additional work, or to annul opinions or offer new ones to perfect a litigation strategy" and that "[t]o construe [Rule 26(e)] supplementation to apply whenever a party wants to bolster or submit additional expert opinions would [wreak] havoc in docket control and amount to unlimited expert opinion preparation." Doc. No. 153 at 14:12-20 (citations and internal quotation marks omitted). Further, the Court noted: (i) that Dr. Ostergard had admitted in deposition testimony that he had simply "neglected" to include the dyspareunia causation opinion in his initial opinion; and (ii) that Ms. Enborg had failed to show that the information on which Dr. Ostergard's dyspareunia causation opinion was based was not available prior to the August 19, 2019 deadline for initial expert disclosures. Id. at 14:21-15:7. Thus, the Court concluded that Dr. Ostergard had improperly "granted himself a two-month extension on the deadline for expert disclosure in this case" and struck the second report. Id. at 15:8-11.

**C.     Ms. Enborg's Motion to Reconsider**

On March 23, 2022, Ms. Enborg filed a motion under Rule 60(b) to reconsider the order

5

striking Dr. Ostergard's second report. Doc. No. 160. In the opening brief, Ms. Enborg does not dispute that the second report was new opinion subject to Rule 26(a)(2)(B) (as opposed to a legitimate Rule 26(e) supplement) but argues that the Court "committed clear error" because it failed to apply Rule 37(c)(1), which bars evidence where a party fails to comply with Rule 26 disclosure requirements "unless the failure was substantially justified or is harmless." Id. at 5:16-28; Fed.R.Civ.P. 37(c)(1). Ms. Enborg contends that Dr. Ostergard's failure to comply with the August 19, 2019 disclosure deadline was "harmless" under factors set forth in *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. App'x. 705 (9th Cir. 2010), where the Ninth Circuit affirmed a district court order allowing an expert to testify at trial where the plaintiff admitted that it had "technically violated Rule 26(a)(2)(B)" by failing to serve the expert's "full report" by the deadline for initial expert disclosures in the scheduling order. Doc. No. 160-1 at 6:1-7; see also Lanard, 375 F. App'x at 713.

      Ethicon argues in opposition that Ms. Enborg's argument is "irrelevant because the Court did not strike Dr. Ostergard's report under Rule 37(c)(1)." Doc. No. 169 at 3:1-3. According to Ethicon, the Court correctly followed *Mullins* in finding that Rule 37(c)(1) is inapplicable because Dr. Ostergard's second report was not a "proper 'supplement' " under Rule 26(e). Id. at 3:9-17. In other words, Ethicon takes the position that "a report 'required by [Rule 26(e)]' is … a precondition" (given the facts underlying its motion to strike) for Rule 37(c)(1) to apply. Id. at 4:8-13.

      On reply, Ms. Enborg argues that the Court struck "Dr. Ostergard's supplemental report[] as an untimely supplement pursuant to Rule 26(e)" and that consequently "the Court's ruling implicates Rule 37(c)." Doc. No. 175 at 2:8-9. Further, Ms. Enborg argues that Rule 37(c)(1)—and specifically, the "harmless" standard in Rule 37(c)(1)—"applies regardless of whether 'true supplementation' has occurred, or whether a 'new' opinion is served." Id. at 175 at 2:21-25.

      At an April 25, 2022 case management conference, the Court offered the parties the opportunity to file additional briefs further addressing the significance, if any, of a finding that the second report constituted new opinion, as opposed to Rule 26(e) supplementation. Doc. No. 184. Ms. Enborg argued in her supplemental briefing that, assuming the second report is new opinion,

6

1  it would be appropriate under Rule 16 and Rule 6 to amend the scheduling order retroactively to
2  extend the Rule 26(a)(2)(B) disclosure deadline, Doc. No. 189, while Ethicon argued that neither
3  amendment of the scheduling order—nor a motion to amend the scheduling order—is permissible
4  at this stage of the proceedings, particularly since the final pretrial order has already been issued.
5  Doc. No. 214.

## LEGAL FRAMEWORK

7  Under Rule 60(b) of the Federal Rules of Civil Procedure, a party can obtain relief from
8  judgment or an order on various grounds. Fed.R.Civ.P. 60(b). Where reconsideration of a non-
9  final order is sought, the court has "inherent jurisdiction to modify, alter or revoke it." United
10 States v. Martin, 226 F.3d 1042, 1048–49 (9th Cir. 2000). Generally stated, reconsideration is
11 appropriate where there has been an intervening change in controlling law, new evidence has
12 become available, or it is necessary to correct clear error or prevent manifest injustice. See Sch.
13 Dist. No. 1J Multnomah County, Oregon v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir.1993);
14 Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California, 649 F. Supp. 2d 1063,
15 1069 (E.D. Cal. 2009). "Clear error occurs when the reviewing court on the entire record is left
16 with the definite and firm conviction that a mistake has been committed." Smith v. Clark Cty. Sch.
17 Dist., 727 F.3d 950, 955 (9th Cir. 2013).

## DISCUSSION

19 In the order granting Ethicon's motion to strike, the Court found that Dr. Ostergard's
20 second report—or, more specifically, additional content relating to dyspareunia in the second
21 report—was not a Rule 26(e) supplement because: (i) Dr. Ostergard's dyspareunia causation
22 opinion was based on information available to Dr. Ostergard prior to the August 19, 2019 deadline
23 for initial expert disclosure under Rule 26(a)(2)(B); and (ii) Dr. Ostergard admitted at deposition
24 that he had simply "neglected" to provide it in his initial report. Doc. No. 153 at 14:21-15:7. In
25 doing so, the Court adopted language from *Mullins,* where the MDL Court stated, in essence, that
26 Rule 26(e) supplementation cannot be used to add new opinions to expert reports and the deadline
27 for initial expert disclosure has passed. Id. at 14:12-20.
28 At one point, Ms. Enborg construes this as a finding that Dr. Ostergard's second report was

7

an "untimely supplement pursuant to Rule 26(e)." Doc. No. 175 at 2:8-9. That interpretation of the Court's order is incorrect. Rule 26(e) can allow for supplementation after the Rule 26(a)(2)(B) deadline for initial expert disclosure has passed. See Fed.R.Civ.P. 26(e) (stating that any "additions or changes" to expert report or deposition testimony "must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due"). Thus, had Dr. Ostergard's second report constituted legitimate Rule 26(e) supplementation it may have been timely on that basis alone. See Liberty Mut. Fire Ins. Co. v. Bosa Dev. Cal. II, Inc., 2019 WL 3554938, at *5 (S.D. Cal. Aug. 5, 2019) (distinguishing true Rule 26(e) supplementation from new opinion in performing timeliness analysis); In re C. R. Bard, Inc., Pelvic Repair Sys. Prod. Liab. Litig., 2017 WL 4117844, at *2 (S.D.W. Va. Sept. 15, 2017) (finding that "defendant's supplemental disclosures" were "timely" to the extent they were "true supplementation"). The Court's finding, to be clear, was that Rule 26(e) does not apply at all because Dr. Ostergard's second report was not a "supplement" and that consequently, Dr. Ostergard's dyspareunia causation opinion was a "new" opinion that was due by August 19, 2019—the Rule 26(a)(2)(B) deadline in the scheduling order issued by the MDL Court. See Fed.R.Civ.P. 26(a)(2)(B) (stating that expert report must contain "a complete statement of all opinions the witness will express").

The Court has conducted a comprehensive review of relevant case law and confirmed that this finding was not error. Courts in the Ninth Circuit and elsewhere consistently find that opinions based on information available prior to the Rule 26(a)(2)(B) disclosure deadline are not supplements for purposes of Rule 26(e)[4] and, similarly, that Rule 26(e) does not extend the disclosure deadline for opinions that could have been included in initial Rule 26(a)(2)(B) disclosures.[5]

---

[4] See, e.g., Liberty Mut. Fire Ins. Co., 2019 WL 3554938 at *2 (finding that report based on facts available prior to initial expert disclosure deadline was "just a new late report"); Werdebaugh v. Blue Diamond Growers, 2014 WL 7148923, at *7 (N.D. Cal. Dec. 15, 2014) (finding that second expert report was not a supplement under Rule 26(e) because information underlying changes was available prior to the initial disclosure deadline and that the fact that expert failed to investigate " d[id] not render that information unknown or undiscovered as required by Rule 26(e)"); Reinsdorf v. Skechers U.S.A., 922 F. Supp. 2d 866, 881 (C.D. Cal. 2013) (finding that so-called "supplement" was "new opinion" where there was no indication that information underlying the opinion "was unavailable at the time of [the expert's] initial report and deposition").

[5] See, e.g., Aguayo-Becerra v. FLSmidth, Inc., 2017 WL 6611670, at *2 (W.D. Wash. Dec. 27, 2017) ("The

8

Having established that the dyspareunia causation opinion was "just a late new late report" and not a Rule 26(e) supplement, the question is whether the Court nonetheless erred in striking Dr. Ostergard's second report. As stated above, Ms. Enborg argues that the Court's order was clear error under Rule 37(c)(1) because the late disclosure of Dr. Ostergard's dyspareunia causation opinion approximately two months after the Rule 26(a)(2)(B) deadline was "harmless" given the case schedule and the realities of what transpired in discovery. Ethicon, on the other hand, takes the position that Rule 37(c)(1) was never triggered because Dr. Ostergard's dyspareunia causation opinion was not a true supplement and, thus, was not "required" under Rule 26(e).

In the Court's view, Ethicon is incorrect. By its terms, Rule 37(c)(1) applies not only to supplemental disclosures required under Rule 26(e) but also to initial disclosures required under Rule 26(a). See Fed.R.Civ.P. 37(c)(1); see also, Schiller v. City of New York, 2008 WL 4525341, at *5 (S.D.N.Y. Oct. 9, 2008) (stating that "failing to disclose fully at the outset" and "failing to supplement in a timely manner" both "trigger" Rule 37(c)). Non-supplemental disclosures made after the deadline for initial disclosures are "untimely initial expert reports" in violation of Rule 26(a), Liberty Mut. Fire Ins. Co., 2019 WL 3554938 at *2, and, thus, subject to the Rule 37(c)(1) exclusion analysis. See, e.g., Cole v. CRST, Inc., 2017 WL 1234215, at *9 (C.D. Cal. Mar. 30, 2017), aff'd sub nom. Cole v. CRST Van Expedited, Inc., 842 F. App'x 162 (9th Cir. 2021) (finding that expert declaration was "untimely and therefore inadmissible pursuant to Federal Rule of Civil Procedure 37(c)(1)" because it was "not a supplement to his earlier report").[6]

---

supplementation rule is not intended to allow parties to add new opinions to an expert disclosure based on evidence that was available to them at the time the initial disclosure was due."); Munchkin, Inc. v. Luv N' Care, Ltd., 2015 WL 12672088, at *5 (C.D. Cal. Jan. 21, 2015) ("Since the Supplemental Manzo Report was not in fact 'supplemental,' it should have been submitted on October 6, 2014—the deadline for submission of opening reports by the party with the burden of proof."); Olson v. Uehara, 2014 WL 5605048, at *2 (W.D. Wash. Nov. 4, 2014) (stating that "[t]he supplementation rule is not intended to allow parties to add new opinions to an expert disclosure *based on evidence that was available to them at the time the initial disclosure was due*" (emphasis original)); Nehara v. California, 2013 WL 5670867, at *1–4 (E.D. Cal. Oct. 16, 2013) (rejecting attempt to "avoid the expert disclosure deadlines set by the Court" by characterizing "second disclosure as 'supplemental' "); Plumley v. Mockett, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010) (Rule 26(e) "do[es] not permit a party to introduce new opinions after the disclosure deadline under the guise of a 'supplement' ").

[6] See also, Liberty Mut. Fire Ins. Co., 2019 WL 3554938 at *1 ("Because the Court finds the two supplemental reports are not entirely supplemental, the Court next considers whether the failure to timely provide them was substantially

9

1    The Court therefore finds that Rule 37(c)(1) analysis applies to exclusion of Dr.
2 Ostergard's second report.
3    Rule 37(c)(1) "forbid[s] the use at trial of any information required to be disclosed by Rule
4 26(a) that is not properly disclosed," unless "the failure to disclose the required information is
5 substantially justified or harmless." Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101,
6 1106-07 (9th Cir. 2001) (citing Fed.R.Civ.P. 37(c)(1)); see also, Carson Harbor Village, Ltd. v.
7 Unocal Corp., 2003 WL 22038700, at *2 (C.D. Cal. Aug. 8, 2003) ("Excluding expert evidence as
8 a sanction for failure to disclose expert witnesses in a timely fashion is automatic and mandatory
9 unless the party can show the violation is either justified or harmless.").
10    "Among the factors that may properly guide a district court in determining whether a
11 violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party
12 against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the
13 likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely
14 disclosing the evidence." Lanard, 375 Fed. App'x. at 713. "The burden to prove harmlessness is
15 on the party seeking to avoid Rule 37's exclusionary sanction." Goodman v. Staples The Office
16 Superstore, LLC, 644 F.3d 817, 827 (9th Cir. 2011) (citing Yeti by Molly Ltd., 259 F.3d at 1107);
17 R&R Sails, Inc. v. Ins. Co. of Penn., 673 F.3d 1240, 1246 (9th Cir. 2012) ("The party facing
18 sanctions bears the burden of proving that its failure to disclose the required information was
19 substantially justified or is harmless.").
20    As to the first *Lanard* factor, Ms. Enborg argues that there was no surprise or prejudice in
21 connection with Dr. Ostergard's untimely dyspareunia causation opinion because she has indicated
22 from the outset that she is seeking recovery in connection with dyspareunia and because the
23 allegation that she suffers from dyspareunia was addressed in Dr. Ostergard's timely initial report,

---

25 justified or harmless under Rule 37(c)(1)."); In re C. R. Bard, Inc., Pelvic Repair Sys. Prod. Liab. Litig., 2017 WL
4117844, at *2 (S.D.W. Va. Sept. 15, 2017) ("If the defendant's supplemental disclosures are true supplementation
26 then they are timely. If the reports are not true supplementation, then the plaintiff may not use the new information in
the reports on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." (citing
27 Fed.R.Civ.P. 37(c)(1)); Plumley, 836 F. Supp. 2d at 1062 ("[A] supplemental expert report that states additional
opinions ... is beyond the scope of proper supplementation and subject to exclusion under Rule 37(c)."); Paugh v.
28 Ottman, 2008 WL 2704561, at *3 (D. Idaho July 3, 2008) ("Accordingly, the supplemental reports, to the extent they
state new opinions, are excluded under Rule 37(c)(1).").

her interrogatory responses, her deposition, and the deposition given by her former husband. As to the second *Lanard* factor, Ms. Enborg argues that any surprise or prejudice that may have occurred due to the untimely disclosure of Dr. Ostergard's causation opinion was cured because Dr. Ostergard's second report was issued within two months of the Rule 26(a)(2)(B) deadline in the scheduling order, before the close of expert discovery, before Dr. Ostergard's deposition, before the deposition of the relevant Ethicon expert, Dr. Ramm, and many months before trial. Further, she argues that Ethicon did not seek to continue Dr. Ostergard's deposition or add a second deposition due to the timing of the dyspareunia causation opinion and that Dr. Ramm expressly addressed dyspareunia causation in her deposition testimony and in both of her reports. As to the third *Lanard* factor, Ms. Enborg argues that there has empirically been no disruption to trial, since this all transpired in 2019. And as to the fourth *Lanard* factor, Ms. Enborg argues that there was no bad faith or willfulness involved because the record shows that omission of the dyspareunia causation opinion was due to simple neglect on Dr. Ostergard's part and that Dr. Ostergard promptly addressed the omission when it came to his attention through Ms. Enborg's deposition testimony. Finally, Ms. Enborg argues that the Court should find omission of the dyspareunia causation opinion "harmless" because her dyspareunia is a "real and significant injury" and an "important component" of her damages. Doc. No. 160-1 at 9:8-18.

Ethicon, for its part, rejects Enborg's "all's well that ends well" argument and argues that it was "entitled to know all of Dr. Ostergard's opinions in advance of their own expert disclosure deadline" and that allowing Dr. Ostergard "to revisit his opinions" after Ethicon had made their expert disclosures "files in the face of the [scheduling order] deadlines and Rule 26." Doc. No. 127 at 3:3-11.

The Court emphatically agrees with Ethicon that violating a scheduling order is no trivial matter. See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir. 1992) ("A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."). Rule 37(c)(1), however, excuses such violations in certain cases, and Ms. Enborg has made a compelling showing (consistent with relevant Ninth Circuit authority) that Dr. Ostergard's late disclosure was "harmless," without much in the way of

substantive rebuttal from Ethicon. Other sanctions for Ms. Enborg's violation of the scheduling order may have been available had Ethicon sought them, see Fed.R.Civ.P. 37(c)(1)(A)-(C), but the Court finds that exclusion of Dr. Ostergard's dyspareunia causation opinion is unwarranted under the circumstances.[7]

The Court will therefore grant Ms. Enborg's motion for reconsideration and deny Ethicon's motion to strike Dr. Ostergard's second report.

**ORDER**

According, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to reconsider (Doc. No. 160) is GRANTED:
2. Defendants' motion to strike Dr. Ostergard's second report (as set forth in Doc. No. 111) is DENIED.

IT IS SO ORDERED.

Dated:   May 24, 2022                              _____
                                                   SENIOR DISTRICT JUDGE

---

[7] In light of these findings, it is unnecessary for the Court to consider the parties' arguments with respect to retroactively amending the scheduling order.